### THOMAS BURTON'S LESSEE v. VAUGHAN et al.

Supreme Court. October 16, 1800.

*Wilson's Red Book, 296.*

*Bayard* and *Horsey* for plaintiff. *Wilson, Peery,* and *Cooper* for defendants.

Plaintiff claimed as heir in tail under William Burton's will, dated January 5, 1695, whereby, in the first part of it, John would take an estate tail in Longneck, and Joseph and Woolsey similar estates in the moieties of Cheat. Then follow these expressions:

> "That is to say, if my son John shall decease without lawful issue, as aforesaid, then the lands given to the said John shall go and descend to my son Woolsey, and Joseph to enjoy the whole quantity of 775 acres herebefore given by me between him and Woolsey; but if either Joseph, or Woolsey shall decease, then the survivor of them, his heirs lawfully begotten as aforesaid, to enjoy the aforesaid 775 acres of land finally etc."

> "So that my desire is that none of my sons as aforesaid, or their heirs as aforesaid, shall at any time or times forever hereafter have privilege to alienate, sell, give, dispose, or transfer any of their lands, given them, as above is mentioned, out of the family or name of Burton's, so long as any of their family or name are in being; but if the name should happen to be extinct, the lands to descend to the next lawful heir of the female sex forever: Nevertheless 'tis provided that if any of my sons aforesaid should incline or think fit to sell or transfer any of their lands by me given to them, or any one of them, it is and shall be lawful for them or any of them to sell their lands to any of their brothers, or to their heirs, anything herein contained to the contrary notwithstanding, to no other person or persons whatsoever; neither shall the purchaser thereof have power or liberty to dispose of the said land so purchased by him out of the name or family of their brothers, or their lawful heirs aforesaid forever."

John died without issue, and Woolsey took his lands, and Joseph the whole of Cheat. Joseph left issue his eldest son William and devised those lands in fee to him,[1] who was grandfather of plaintiff, his heir in tail. William sold a part of Cheat to Burton Waples, and the residue to William Prettyman, and gave several deeds of bargain and sale with general warranty.

Defendants' counsel. The intention of William Burton is obvious, but the difficulty is how his intention is to have effect. He intended his lands should descend as in special tail among his numerous offspring, and yet, being all equally objects of his bounty, that they should be at liberty to transfer to each other, but not out of the family. There is no propriety in supposing that the whole clause relative to future transfers shall be void, because accompanied with an unlawful restriction to his own family; for words contained in a condition which is void have been held sufficient to show an intent that devisee should take a fee, Cro.Eliz. 744, 745. If an illegal intention is expressed, yet words of enlargement, not being illegal, are not to be rejected. Any intention to prevent tenant in tail's breaking the entailment would be void, but an infinite number of estates tail will not make a perpetuity. Testator may therefore authorize the devisee to transfer to another person. This has been done by Joseph, whose will may have effect either as an execution of a collateral power vested in him while tenant in tail, or else, his liberty of transferring being inconsistent with an estate tail and creating in him a fee, his will may be effectual as that of a tenant in fee simple.

There is no doubt that tenant in tail may have a collateral power which he may execute in prejudice of the issue in tail or the remainderman. Pow.Powers 26, 180, Salk. 240. It is equally clear that a power may be executed by deed or will, without referring to the first instrument, except when there is a special provision as to the instrument. Pow.Powers 55, 57, 59, 111. But it is objected that Joseph's will is not a good execution of the power, because it should only have given an estate tail. We say the power was well executed in point of extent. The estate of William arises out of his grandfather's will, Joseph's will being a mere execution of the power. Now a power cannot be again delegated, Pow.Powers 372, 374; therefore, Joseph could not have given William an estate tail with a power to transfer; and as he could not have it from his grandfather, this essential part of old William Burton's intention must on such construction be frustrated. Joseph, by giving a fee simple, evidently then in the *(cy pres)* most near manner executed the power given him.

---

[1] In manuscript "to him" follows "devised."

If we consider no collateral power to have been given, this liberty of selling is inconsistent with an estate tail and will make a fee, 2 Str. 799, Fearne Rem. 86, Salk. 234, 239, 3 Com.Dig. 422.

The second point of defense is, that the deeds of bargain and sale by William Burton, supposing him tenant in tail, being accompanied by a general warranty, discontinued the estate tail and put their issue to their remedy by formedon under the Statute *De Donis.* It will perhaps not be denied that every plaintiff in ejectment must have a right of entry; if twenty years elapses, or there is a discontinuance as by feoffment, he cannot maintain his action, 2 Esp.N.P. 431. In Littleton's time a release displaced an estate tail and made it cease during the life of tenant in tail, Litt. Ten., s. 650. But a bargain and sale, release or confirmation have since that time been fully settled to pass an estate longer than for life of tenant in tail, even until entry of the issue in tail, 3 Burr. 1705, Notes on Co.Litt. 331, a. note 286.[2] Wherever a warranty is annexed to the estate of the purchaser, and the estate tail is divested out of the warrantor at the time of the making the warranty, the warranty is supported, and with assets will even bar the formedon, Notes on Co.Litt. 373b, note 328.[3] If there are not assets, the statute, 13 Edw. I, c. 1 (*De Donis*), will prevent the bar, yet a formedon is the action given for avoiding such conveyance. It is therefore now held that bargain and sale with warranty makes a discontinuance, Notes on Co.Litt. 330a, note 284.[4] There is no ground for saying that livery and seisin is necessary to make a discontinuance, or what is equally notorious; for a release only after disseisin will not make a discontinuance, Note on Co.Litt. 330a, 1.[5] It is the warranty that occasions it, Litt.Ten., s. 601. No person has ever denied that a release with warranty has this effect, and yet a bargain and sale creates the same estate that a release does, Notes on Co.Litt. 331a.[6] And it may also be remarked that by our Act, 1 Del. Laws 221, a deed of bargain and sale is declared to be equivalent to a feoffment, and the defendant's deeds have all the requisites of that Act.

Plaintiff's counsel. The intention of old William Burton was evidently to keep the estate in his family, and even when he empowers a devisee to sell, it is confined to the name and family of

---

[2] The reference is to Charles Butler's notes in the 14th edition of Coke on Littleton.

[3] *Ibid.*

[4] *Ibid.*

[5] *Ibid.*

[6] *Ibid.*

Burton; and when all his male issue are extinct, there is a limitation over to the female. It is evident then that Joseph Burton's will is not a good execution of the power, and therefore void. It is clear that the power to sell, if of any effect, must be collateral and not to operate by way of an enlargement of estate, for then a particular intent, without any necessity, would defeat his general intent of giving an estate tail, which he repeats on every occasion in his several devises to all his nine sons. With regard to this point, we esteem it settled by the decision on this very will in the High Court of Errors and Appeals. As to the second point, if it had been the law that a bargain and sale with warranty by tenant in tail made a discontinuance, it would have been so settled centuries ago; but no book but Mr. Butler's note on 330a.[7] states the law to be so, and he only says it may work a discontinuance, yet he does not show in what cases. Defendant has undertaken to prove assets in plaintiff's hands, but they have not all the qualities of assets prescribed in Co.Litt. 374b, and therefore the statute of 13 Edw. I, c. 1, prevents the bar, and when the books say the party is put to his action, it may mean ejectment; but if a formedon should be necessary in England, as it cannot be brought here, an ejectment must supply its place. And although we cannot recollect ejectments brought by tenants in tail after a discontinuance, it must have often occurred in practice.

JOHNS, C. J. Gentlemen of the jury, you observe the action you have to decide is an ejectment to recover part of Cheat. You have also observed there is no controversy as to location, but only as to title. It appears that the plaintiff and defendants both derive title from William Burton, the elder, so far, therefore, the title is a good one. Plaintiff deduces his title from William through Joseph and says he is heir in tail, and that the lands are entailed. There is no controversy as to the pedigree.

We must, therefore, turn our attention to the title set up by defendants from which the objections to the plaintiff's arise. Defendants deduce their title from Joseph Burton's will and a deed from William, his son. The first question is whether Joseph had a right to dispose of the lands or not, and we are to look back to old William Burton's will to see whether there is an estate tail or a fee given. But this has been determined in the High Court of Errors and Appeals, and I was there informed that this question had been argued and determined three times in favor of the plaintiff. I have again listened to the arguments, and I think it was most certainly an estate tail and not a fee simple. I do not think

---

[7] *Ibid.*

it necessary to go into any reasoning on the subject, as defendants' counsel are already acquainted with our reasons. If Joseph was tenant in tail, he could not pass a title by will or deed. It is said there was a power accompanying the estate tail which has been executed. Supposing the power to be good, we think it has not been well executed, for the testator intended the estate should remain in his family, and it is therefore void.

There is another point, upon which the defendants' counsel have much relied, and the substance is, that the plaintiff ought to have brought a formedon, and that a deed of bargain and sale with warranty makes a discontinuance. We have attended to his argument; but have never heard that a formedon was brought in this country. An ejectment has always been brought and supplies the place of the formedon. It is also said, if there were assets, it would bar the recovery, but the evidence does not support that ground.

We were surprised when we heard the points that were made. We considered that the Court might have stopped the counsel. The privilege of being heard has been misunderstood. We had a right to have given our opinion at first, and an exception might have been taken to our opinion.

Verdict for plaintiff.

Motion in arrest of judgment, because the quality of the land is not mentioned in *narratio,* and there is too much uncertainty.

*Peery.* The quality and quantity should both be shown, 5 Com.Dig. 677. The quality is necessary, 11 Co. 55, 25, Salk. 254. The nature and quality of the land should be certain, and those cases where a recovery has been allowed without showing the quality are upon the principle that "land," as in this case, means "arable land," 2 Bac.Abr. 169, Cowp. 350. If in this case it is so taken, the sheriff cannot deliver possession, for the greater part is woodland. The plot in this case make[s] the quality more certain, but thereby more difficulty arises; for the plaintiff ought not to recover what he has not sued for, the woodland, and the sheriff cannot give possession of it.

*Bayard.* There [is] now more liberality than formerly in the construction of the pleadings in ejectment. We see that the ancient distinction between messuage and tenement, and messuage or tenement, is done away, 1 Term 11. As it is conceded that land means arable land, the court will say after verdict the whole was arable land. The verdict will cure such objections, 1 Burr. 623. But it appears to me the declaration is well enough, for it names the close, and it has been determined long since that

an ejectment "of two closes, called *A* and *B* containing three acres," was good, Cro.Jac. 435, and this case is held for good law, Cro.Car. 555, and established, 2 Cromp. 158, though if the *narratio* had named arable and pasture, and not specified how much of each, it might have been bad. If this case was to be settled at Westminster, they would refer to our understanding of the plots, as they do to Ireland for the meaning of terms, Str. 72, 1063, 1084. And our plots describe the land with perfect certainty, and amount to the same thing as describing courses and distances in *narratio,* which is more certain than the quality itself.

PER CURIAM. JOHNS, C. J. In *Pekah's Lessee v. Haughy,* the *narratio* was drawn as this. Mr. Read, Levy, Pekah and myself thought, upon consultation, that the declaration was sufficiently certain, and we are still of this opinion.